UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KELLY HAGBERG,

                                    Plaintiff,

          v.

CAROLYN W. COLVIN,[1] Commissioner of
 Social Security,

                                    Defendant.

**REPORT
and
RECOMMENDATION**

**12-CV-00621A(F)**

APPEARANCES:          OLINSKY AND SHURTLIFF, LLP
                      Attorneys for Plaintiff
                      HOWARD D. OLINSKY, of Counsel
                      300 South State Street
                      Syracuse, New York 13202

                      WILLIAM J. HOCHUL, JR.
                      UNITED STATES ATTORNEY
                      Attorney for Defendant
                      GAIL Y. MITCHELL
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202, and

                      STEPHEN P. CONTE
                      Regional Chief Counsel - Region II
                      JOANNE JACKSON
                      Assistant Regional Counsel
                      United States Social Security Administration
                      Office of the General Counsel, of Counsel
                      26 Federal Plaza
                      Room 3904
                      New York, New York 10278

---

[1]Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on

October 19, 2012.  (Doc. No. 7).  The matter is presently before the court on motions for

judgment on the pleadings, filed on May 2, 2013, by Defendant (Doc. No. 11), and

Plaintiff (Doc. No. 12).

## BACKGROUND

Plaintiff Kelly Hagberg ("Plaintiff" or "Hagberg"), seeks review of Defendant's

decision denying her Disability Insurance Benefits ("DIB") ("disability benefits") under,

Title II of the Social Security Act ("the Act"), and Supplemental Security Income Benefits

("SSI") benefits under Title XVI of the Act.  In denying Plaintiff's application for disability

benefits, Defendant determined Plaintiff had the severe impairments of obesity, asthma,

bipolar disorder, anxiety, and substance abuse in remission, but does not have an

impairment or combination of impairments within the Act's definition of impairment.  (R.

54). [2] Defendant further determined that even if Plaintiff's medically determinable

impairments could reasonably be expected to produce Plaintiff's alleged symptoms,

their alleged persistence and limiting effects by Plaintiff were not credible.  (R. 58).  As

such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged

onset date through the date of the Administrative Law Judge's decision on March 18,

2011.  *Id.*

## PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits on June 16, 2009 (R. 132),

alleging disability based on a depression, anxiety, asthma, migraine headaches, irritable

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the
Court's review.

bowel syndrome, varicose veins, and fallopian tube scarring as of July 1, 2008.  (R. 174).  Plaintiff's applications were initially denied by Defendant on December 24, 2009 (R. 66), and, pursuant to Plaintiff's request filed January 11, 2010 (R. 74-83), a hearing was held before Administrative Law Judge Jennifer Whang ("Whang" or "the ALJ") on February 15, 2011 in Rochester, New York, and via video teleconference in Baltimore, Maryland.  (R. 22-46).  Plaintiff, represented by Tasha Scott, Esq., ("Scott"), appeared and testified at the hearing.  (R. 23-42).  Testimony was also given by vocational expert Sylva Reyes ("Reyes" or "the VE").  (R. 43-46).  The ALJ's decision denying the claim was rendered on March 18, 2011.  (R. 52-60).

On April 7, 2011, Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 17-19).  The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on May 2, 2012.  (R. 1-6).  This action followed on July 2, 2012, with Plaintiff alleging the ALJ erred by failing to find her disabled.  (Doc. No. 1).

Defendant filed an answer on October 18, 2012 (Doc. No. 6), and on May 2, 2013, filed a motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 11) ("Defendant's Memorandum").  Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion") on May 2, 2013, accompanied by a supporting memorandum of law (Doc. No. 13) ("Plaintiff's Memorandum").  On July 1, 2013, Plaintiff filed a Response/Reply to Defendant's motion for judgment on the pleadings (Doc. No. 14) ("Plaintiff's Reply").  Defendant filed a Reply/Response to Plaintiff's motion for judgment on the pleadings on July 1, 2013 (Doc. No. 15) ("Defendant's Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be GRANTED, Plaintiff's motion should be DENIED, and the Clerk of the Court should be directed to close the file.

## FACTS[3]

Plaintiff Kelly Hagberg ("Hagberg" or "Plaintiff") was born on March 6, 1980 (R. 170), received her GED and attended one year of college (R. 30, 179), and lives with her three school aged children.  (R. 423).  Plaintiff's recent work experience includes part-time work at a Wendy's fast food restaurant and full-time work as a cleaner (R. 152), where Plaintiff alleges she stopped working because her impairments caused her to call in sick.  (R. 174).  Prior to the date of alleged onset of disability on July 1, 2008, Physician Assistant  Anthony LoCicero (" PA LoCicero"), a physician assistant with Unity Family Medicine in Spencerport, New York ("Unity Medicine" or "Unity"), examined Plaintiff for complaints of varicose vein bruising.  (R. 310).  Upon examination, PA LoCicero diagnosed Plaintiff with mild variscosities (leg swelling) in both lower extremities, prescribed compression stockings and advised Plaintiff to elevate her legs.  (R. 311).

Relevant to the alleged period of disability, on July 2, 2008, licensed clinical social worker ("LCSW") Barbara Skornia ("LCSW Skornia") completed a consultative examination on Plaintiff who reported a suicide attempt at age eight "because it was really bad . . . I was treated like a slave in that house . . . physically and emotionally abused by [my] mom's friend and husband."  (R. 419).  Plaintiff reported she stopped attending school at age 14 as a result of anxiety, and started using cocaine, alcohol and cannabis as a teenager.  *Id.*  Upon examination, LCSW Skornia diagnosed Plaintiff with

---

[3] Taken from the pleadings and the administrative record.

mood disorder not otherwise specified ("NOS"), anxiety disorder NOS, cannabis and alcohol dependence, and asthma, assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 55,[4] and recommended Plaintiff attend psychotherapy counseling for one to four weeks.  (R. 420).

On July 23, 2008, Plaintiff visited Physician Assistant Wendy Cody ("PA Cody") at Unity Family Medicine ("Unity"), a health care provider in Spencerport, New York, for increased anxiety with three panic attacks each day, and no thoughts of suicidal or homicidal ideation.  (R. 312).  Upon examination, PA Cody assessed Plaintiff with anxiety state NOS, and prescribed Xanax for Plaintiff's anxiety.  *Id*.

On August 8, 2008, Plaintiff sought treatment from Strong Memorial Hospital ("Strong") in Rochester, New York after a motor vehicle accident, where Sandra Schneider, M.D. ("Dr. Schneider") ordered a computerized tomography ("CT") scan of Plaintiff's head and cervical spine that showed normal results.  (R. 339-40).  The same day, Keith Grams, M.D. ("Dr. Grams"), a radiologist with Strong, evaluated a CT scan of Plaintiff's abdomen and pelvis that showed an enlarged spleen, and opined that Plaintiff's bilateral striated nephrogram (kidney X-ray) showed possible pyelonephritis (urinary tract infection of kidneys).  (R. 343).

On August 21, 2008, Plaintiff returned to PA LoCicero with complaints that her Celexa and Xanax medications were not working, and that Plaintiff continued to experience breakthrough episodes of sadness, nervousness, and irritability.  (R. 314).

---

[4] The Global Assessment of Functioning (GAF) scale is used to report an individual's overall level of functioning.http:// *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A GAF of 41-50 indicates: Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or social functioning (*e.g.*, no friends, unable to keep a job) . . . A GAF of 51-60 [indicates] moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). DSM-IV-TR at 32.

PA LoCicero assessed Plaintiff as oriented to time and space with normal affect, with no adhedonia (loss of ability to experience pleasure), anxiety, compulsive behavior, hallucinations, memory loss, or mood swings (R. 314), and diagnosed Plaintiff with depression NOS uncontrolled, and changed Plaintiff's Celexa medication to Zoloft.  (R. 315).

On September 26, 2008, Melanie Conolly, M.D. ("Dr. Conolly"), a family practitioner with Unity, completed a follow-up examination on Plaintiff for Plaintiff's UTI where Plaintiff reported anxiety and ear pain (R. 316), and no difficulty meeting home, work, or social obligations, thoughts of suicide or homicidal ideation, or manic or panic episodes.  *Id.*  Dr. Conolly diagnosed Plaintiff with well controlled major, moderate depression, temporomandibular joint (jaw joint) disorder ("TMJ"), tobacco use, irritable bowel syndrome ("IBS"), and resolved pyelonephritis.  (R. 316).  Dr. Conolly's psychological assessment of Plaintiff was normal.

On January 9, 2009, Dr. Conolly's medical assistant Martha Young ("MA Young"), examined Plaintiff for kidney pain, noted Plaintiff's chronic problems included major, moderate depression, migraine headaches, tobacco use disorder, IBS, and precancerous cervical cancer.  (R. 319).  An ultrasound of Plaintiff's abdomen by Gail E. Stokoe, M.D. ("Dr. Stokoe"), revealed a small follicle on Plaintiff's right ovary.  (R. 347).

 On January 15, 2009, Plaintiff sought treatment from Lakeside Memorial Hospital ("Lakeside") emergency room in Brockport, New York, with complaints of low back and abdominal pain.  (R. 363).  A PA at the hospital,[5] diagnosed Plaintiff with trichomoniasis infection (sexually transmitted disease), kidney stone pyelonephritis, and discharged Plaintiff for continued treatment with Dr. Conolly.  (R. 370).

---

[5] The name of the PA is illegible in the record.

On February 6, 2009, MA Young completed a physical examination on Plaintiff and noted Plaintiff reported difficulty meeting home, work, and social obligations, that Plaintiff was aggravated by conflict and stress at home and work, an irritable mood, diminished interest and pleasure, fatigue, loss of energy, poor concentration and indecisiveness, decrease in libido, with no fearful or compulsive thoughts, feelings of guilt or worthlessness.  (R. 321).  MA Young assessed Plaintiff with anxiety with no fearfulness, forgetfulness, hopelessness, memory loss or mood swing, and normal insight, judgment, attention span and concentration, diagnosed Plaintiff with major/moderate depression in fair control and restless leg syndrome, and increased Plaintiff's Zoloft medication.  (R. 322).

On March 11, 2009, Plaintiff sought treatment from Lakeside for pelvic pain, where, upon evaluation, Plaintiff was discharged for follow up with Dr. Conolly.  (R. 353). Plaintiff returned to Lakeside on May 10, 2009, for a left-sided neck rash after an insect bite.  (R. 358).

On May 27, 2009, Plaintiff returned to MA Young and reported worsening symptoms of anxiety, with fearful and compulsive thoughts and behaviors, irritable mood, diminished interest or pleasure, feelings of guilt or worthlessness, panic attacks, poor concentration, indecisiveness, and disturbance of sleep.  (R. 324).  MA Young assessed Plaintiff with poorly controlled major/moderate depression and acute panic disorder, listed Plaintiff's chronic diagnoses as major, moderate depression, asthma, migraine, not intractable, tobacco use, IBS, and cervical carcinoma in situ (early form of cancer).  (R. 324). Upon examination, MA Young opined Plaintiff exhibited depressed

affect, with no memory loss, mood swings, paranoia or suicidal ideation, and normal insight, judgment, attention span and concentration.  (R. 324-25).

On June 12, 2009, licensed practical nurse Nadine DAlessandro ("Nurse DAlessandro"), a nurse in Dr. Conolly's office, examined Plaintiff who reported extreme difficulty meeting home, work, and social obligations, aggravated by stress at home or work with no relieving factors, anxiety, fearful thoughts, irritable mood, diminished interest or pleasure, fatigue or loss of energy, feelings of guilt or worthlessness, panic attacks, poor concentration, indecisiveness, restlessness, sluggishness, significant change in appetite (weight loss or gain of greater than 5%), and sleep disturbance.  (R. 327).  Nurse DAlessandro assessed Plaintiff with depressed affect, with normal attention span and concentration, insight and judgment, and no suicidal ideation, and noted Plaintiff was no longer visiting LCSW Skornia for counseling because Skornia's office no longer accepted Plaintiff's insurance.  (R. 328).

On June 24, 2009, Plaintiff visited Unity, where a certified medical assistant in Dr. Conolly's office Lisa Mellors ("MA Mellors"), noted Plaintiff reported continued extreme difficulty with meeting family, work, and social obligations with no relieving factors, irritable mood, diminished interest or pleasure, fatigue or loss of energy, manic episodes, restlessness or sluggishness, and sleep disturbances.  (R. 329).  MA Mellors diagnosed Plaintiff with major, moderate depression, extrinsic asthma, bipolar affect, manic unspecified, not intractable migraine, tobacco use, IBS, and cervical carcinoma, in situ, and assessed Plaintiff with a labile affect, with no anxiety, forgetfulness, hallucinations, normal attention and concentration, insight and judgment, and no suicidal ideation.  (R. 330).

On June 30, 2009, Plaintiff presented to Medina Memorial Hospital ("Medina") emergency room with thoughts of suicide and depression (R. 448), where urinalysis was negative for cannabis use.  (R. 453).

On July 8, 2009, LCSW Laura Sullivan ("LCSW Sullivan"), a clinical therapist with Orleans County, completed a comprehensive assessment of Plaintiff on behalf of Medina for thoughts of suicidal ideation.  (R. 423).  Social worker Sullivan noted Plaintiff attempted suicide at ages 8, 10, and 15, and assessed Plaintiff with appropriate affect, good recent and remote memory, good attention, concentration, and judgment, and diagnosed Plaintiff with depressive disorder NOS, anxiety disorder NOS, and assessed Plaintiff a GAF score of 53.  (R. 433).  During an office visit to MA Mellors the same day, Plaintiff reported it "somewhat" difficult to meet Plaintiff's home, work and social obligations, with anxiety, fearful thoughts, diminished interest or pleasure, fatigue or loss of pleasure, feelings of guilt or worthlessness, poor concentration, indecisiveness, restlessness or sluggishness, and significant change in appetite.  (R. 461).  MA Mellors assessed Plaintiff with improving bipolar affect, manic-unspecified, with fair control of Plaintiff's major/moderate depression.  (R. 462).

On August 8, 2009, Adele Jones, Ph.D., ("Dr. Jones"), a psychiatrist, completed a psychiatric evaluation on Plaintiff on behalf of the Social Security Administration, and assessed Plaintiff with blunt affect and dysthymic mood (R. 439), ability to follow and understand instructions and directions, perform simple tasks independently, maintain attention and concentration, and a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress.  (R. 438).  Dr. Jones diagnosed Plaintiff with major

depression, anxiety disorder NOS, cannabis abuse, exercise-induced asthma, and recommended Plaintiff continue Plaintiff's psychiatric counseling.  *Id.*

On the same day, George Alexis Sirotenko, D.O. ("Dr. Sirotenko"), a doctor of osteopathic medicine, conducted an internal medicine examination on Plaintiff that was normal, with no evidence of impaired judgment, but tearful and significant anxiety with hyperventilation upon presentation of a pulmonary function test.  (R. 444).  Dr. Sirotenko diagnosed Plaintiff with anxiety and depression and history of asthma.  (R. 445).

On August 24, 2009, Plaintiff returned to Dr. Conolly, where MA Mellors noted Plaintiff reported extreme difficulty meeting Plaintiff's home, work and social obligations, aggravated by stress at home or work, with no relieving factors, anxiety, fearful thoughts, compulsive thoughts or behaviors, irritable mood, diminished interest or pleasure, feelings of guilt or worthlessness, panic attacks, poor concentration, indecisiveness, restlessness or sluggishness, and significant change in appetite.  (R. 459).  MA Mellors assessed Plaintiff with bipolar affect, unspecified, under fair control, and diagnosed Plaintiff with chronic major/moderate depression, extrinsic asthma, bipolar affect, unspecified, not intractable migraine, tobacco use, inflammatory bowel syndrome, and cervical carcinoma, in situ.  *Id.*

On November 10, 2009, Kashinath Patil, M.D. ("Dr. Patil"), a psychiatrist with the Orleans County Department of Mental Health, completed a psychiatric evaluation on Plaintiff where Plaintiff reported a several year history of high and low emotions, and regular use of cannabis and alcohol.  (R. 524).  Dr. Patil diagnosed Plaintiff with bipolar disorder drug addiction to alcohol, marijuana, and cocaine in partial remission, assessed Plaintiff with a GAF score of 55, and replaced Plaintiff's Topomax (migraines)

and Prozac (depression) medications and started Plaintiff on Depakote (bipolar).  (R. 525).

On December 22, 2009, C. Butensky ("Butensky"), a psychologist, completed a psychiatric review technique of Plaintiff on behalf of the Social Security Administration, and evaluated Plaintiff with mild restrictions to activities of daily living and difficulties in maintaining concentration, persistence or pace, and moderate difficulties in maintaining social functioning, with no episodes of decompensation.  (R. 496).  Psychologist Butensky completed a mental residual functional capacity assessment of Plaintiff the same day, and evaluated Plaintiff with moderate limitations to carrying out detailed instructions, performing activities within a time schedule, maintaining a regular schedule, and being punctual within customary tolerances, and working in coordination with or proximity to others without being distracted (R. 506), and moderate ability to respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, set realistic goals or make plans independently of others, accept instructions, respond appropriately to criticism from supervisors, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  (R. 507).

On December 23, 2009, single decision maker ("SDM")[6] M. Fioretti ("Fioretti") completed a residual functional capacity assessment of Plaintiff, assessing Plaintiff with

---

[6] The term "single decision maker" or "SDM" refers to a "non-physician, state-agency disability analyst" who "'may make the initial disability determination in most cases without requiring the signature of a medical consultant.'" *Roth v. Commissioner of Social Security*, 2012 WL 4480688, at *6 (N.D.N.Y. Sept. 26, 2012)(quoting 71 Fed. Reg. 45890-01 (Aug. 10, 2006)).

no exertional limitations, and opining that Plaintiff should avoid concentrated exposure to fumes, odors, gases, and poor ventilation.  (R. 501-3).

On January 6, 2010, Tulio Ortega, M.D. ("Dr. Ortega"), a psychiatrist with the Orleans County Department of Health, provided psychiatric counseling to Plaintiff after Plaintiff attempted suicide by overdose on December 30, 2009.  (R. 526).  Dr. Ortega diagnosed Plaintiff with bipolar disorder – mixed as per Dr. Patil's evaluation, dependent substance abuse, and borderline personality, and ordered a blood test to evaluate Plaintiff's Depakote levels and liver toxicity before changing Plaintiff's medication.  (R. 527).

On January 13, 2010, Dr. Ortega evaluated Plaintiff's blood work that indicated no presence of Depakote in Plaintiff's blood.  (R. 528).  Plaintiff reported depression, anger, and sleeplessness, and Dr. Ortega prescribed Seroquel to treat Plaintiff's depression and mania.  (R. 528).

On February 18, 2010, Dr. Patil evaluated Plaintiff who reported fairly stable mood, with no depression and increased energy to complete household chores.  (R. 529).  Dr. Patil opined Plaintiff did not show signs of depression or anxiety, and, per Plaintiff's request, increased Plaintiff's Seroquel dose to help Plaintiff to sleep.  *Id.*

On March 13, 2010, Plaintiff presented to Lakeside with complaints of left-sided abdominal pain.  (R. 571).  A CT scan of Plaintiff's abdomen and pelvis the same day interpreted by Faith Farley, M.D. ("Dr. Farley"), was normal.  (R. 571).

On April 7, 2010, Plaintiff returned to Dr. Ortega, after unsuccessful attempts to schedule an appointment with Dr. Patil, to change Plaintiff's depressions medications.  (R. 530).  Dr. Ortega noted Plaintiff appeared depressed with mood alterations and

fluctuations that suggested decompensation of Plaintiff's bipolar disorder.  (R. 530).  Dr.
Ortega increased Plaintiff's Seroquel dose to 600 mg daily, and advised Plaintiff to call
in the event of a mental health crisis.  (R. 531.).

On May 15, 2010 (R. 583), and June 2, 2010 (R. 590), Plaintiff returned to
Lakeside with abdominal pain, and visited the hospital emergency room on June 20,
2010, for a corneal abrasion.  (R. 597).

On June 2, 2010, Plaintiff visited Dr. Ortega for a follow-up appointment, where
Dr. Ortega noted Plaintiff appeared more depressed and sad with some moodiness and
irritability that Plaintiff attributed to her father moving in with her temporarily and ending
the relationship with her boyfriend.  (R. 532).  Dr. Ortega opined Plaintiff's mental
impairment showed improvement over the previous five months, that Plaintiff was much
better, with no evidence of psychosis, mania or suicidal or homicidal ideation, and
increased plaintiff's Seroquel dose to 800 mg daily.  *Id.*

Plaintiff was treated at Lakeside on August 16, 2010 for cough (R. 604), and on
September 10, 2010 for a toothache.  (R. 611).

On September 29, 2010, Plaintiff returned to Dr. Ortega and reported an
altercation with her boyfriend that resulted in a "flare out" of Plaintiff's mood.  (R. 534).
Dr. Ortega opined that Plaintiff showed no evidence of psychosis, suicidal or homicidal
ideation, and decreased Plaintiff's Seroquel dose to 400 mg daily and prescribed
Ambien to help Plaintiff's sleep disorder.  *Id.*  That same day, Plaintiff visited Lakeside
for abdominal pain (R. 618), and returned to Lakeside on November 1, 2010 for an
infected tooth.  (R. 625).

On November 24, 2010, Dr. Ortega provided psychiatric treatment to Plaintiff who reported feeling angry in the mornings, but sleeping well since taking Ambien.  (R. 535).  Dr. Ortega increased Plaintiff's Ambien to 300 mg in the morning and 600 mg at night.  *Id.*

On December 10, 2010, Plaintiff sought treatment from Lakeside for shortness of breath and chest pain that Kenneth D. Pearsen, M.D. ("Dr. Pearsen") diagnosed as borderline cardiomegaly (enlarged heart) on a chest CT scan.  (R. 637).

On January 11, 2011, Dr. Ortega completed a medical source statement on Plaintiff and opined Plaintiff was able to sit for 30 minutes at a time, was seriously limited in ability to maintain attention for a two hour segment, accept instructions and respond appropriately to criticism from supervisors, or deal with normal work stress, and was unable to meet competitive standards for getting along with peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stress. (R. 642).  Dr. Ortega opined that Plaintiff would be off task more than 20% of the time in a eight-hour workday, but that Dr. Ortega was not able to answer many of the questions presented on the medical source statement questionnaire because Plaintiff had not held a job in a long time.  (R. 642).

## DISCUSSION

### 1.    Disability Determination Under the Social Security Act

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

> 12 months. . ..  An individual shall be determined to be under
> a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform

any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant.  *Parker v.*

*Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

## A.   <u>Standard and Scope of Judicial Review</u>

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a

reasonable person would "accept as adequate to support a conclusion."  *Consolidated*

*Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical

facts, diagnoses or medical opinions based on these facts, subjective evidence of pain

or disability (testified to by the claimant and others), and . . . educational background,

age and work experience."  *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983)

(quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating

physician is supported by medically acceptable techniques and results from frequent

examinations, and the opinion supports the administrative record, the treating

physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567

(2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is

supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§  405(g) and

1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[7] if

supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

        The applicable regulations set forth a five-step analysis the Commissioner must

follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520

and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v.*

*Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the

applicant is engaged in substantial gainful activity during the period for which benefits

are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in

such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*

The next step is to determine whether the applicant has a severe impairment which

significantly limits the physical or mental ability to do basic work activities as defined in

the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an

impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an

impairment and the impairment, or an equivalent, is listed in Appendix 1 of the

regulations and meets the duration requirement, the individual is deemed disabled,

regardless of the applicant's age, education or work experience, 20 C.F.R. §§

404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant

---

[7] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of
the Secretary of Health and Human Services in Social Security cases was transferred to the
Commissioner of Social Security, effective March 31, 1995.

with such an impairment is unable to perform substantial gainful activity.[8] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was

---

[8] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

substantial evidence on which the Commissioner based the decision.  20 C.F.R. §

416.935(a); *Richardson*, 402 U.S. at 410.

**B.      Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity.

"Substantial gainful activity" is defined as "work that involves doing significant and

productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b).

Substantial work activity includes work activity that is done on a part-time basis even if it

includes less responsibility or pay than work previously performed.  20 C.F.R. §

404.1572(a).  Earnings may also determine engagement in substantial gainful activity.

20 C.F.R. § 404.1574.  In this case, the ALJ concluded Plaintiff had not engaged in

substantial gainful activity since July 1, 2008, the alleged onset date of disability.  (R.

54.  Plaintiff does not contest this determination.

**C.      Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether the disability

claimant had a severe medically determinable physical or mental impairment that meets

the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits

the claimant's ability to do "basic work activities."  If no severe impairment is found, the

claimant is deemed not disabled and the inquiry ends.  20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do

most jobs," and includes physical functions like walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and

speaking; understanding, carrying out, and remembering simple instructions; use of

judgment; responding appropriately to supervision, co-workers and usual work

situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b).  The step two analysis may do nothing more than screen out *de minimus* claims,  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work.  *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("S.S.R.") 85-28, 1985 WL 56856).

In this case, the ALJ determined Plaintiff had the severe impairments of obesity, asthma, bipolar disorder, anxiety, and substance abuse in remission (R. 54), 20 C.F.R. § 404.1520(c) ("§ 404.1520(c)"), and Plaintiff does not contest such finding.

**D.** **Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listing of impairments in this case includes 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 3.03 ("3.03") (Respiratory Syndrome), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 12.04 ("§ 12.04") (Affective Disorders), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 12.06 ("§ 12.06") (Anxiety

Related Disorders), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.09 ("§ 12.09")

(Substance Addiction Disorders).   In the instant case, the ALJ determined Plaintiff's

impairments do not meet or equal the criteria necessary to establish disability under § §

3.03, 12.04, 12.06 or 12.09, and substantial evidence supports such determination.

Although Plaintiff does not contest the ALJ's determinations regarding these criteria and

instead challenges the ALJ's assessment of Plaintiff's residual functional capacity,

Plaintiff's Memorandum at 13-21, in the interest of completeness, the undersigned

discusses whether Plaintiff meets the criteria for such listed impairments.

**Respiratory Syndrome**

Here, the ALJ determined that Plaintiff's asthma requires Plaintiff take Albuterol

to control symptoms, but that Plaintiff's asthma has not required emergent care or

intubations.

Under § 3.03, asthma must be characterized by

A. Chronic asthmatic bronchitis. Evaluate under the criteria for chronic
obstructive pulmonary disease in 3.02A; Or
B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring
physician intervention, occurring at least once every 2 months or at least six
times a year. Each in-patient hospitalization for longer than 24 hours for
control of asthma counts as two attacks, and an evaluation period of at least
12 consecutive months must be used to determine frequency of attacks.

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 3.03.

The record establishes only that Plaintiff sought medical treatment for breathing

difficulties on August 16, 2010 (R. 604), and December 10, 2010 (R. 637).   No evidence

in the record, however, demonstrates Plaintiff was ever diagnosed with asthma, much

less so severe as to meet the criteria for disability under § 3.03, and Plaintiff is not

disabled under § 3.03.

**Affective Disorders**

In this case, the ALJ determined Plaintiff's anxiety disorder was severe, but that Plaintiff was not able to meet the criteria for disability under 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 12.04B ("§ 12.04B"), or 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 12.04C ("§ 12.04C") (R. 16).  To be disabled under § 12.04, a claimant must meet two of four criteria under Paragraph B of the Listing, specifically, that a disability claimant's affective disorder results in marked restriction of daily activities (§ 12.04B1), marked difficulties in maintaining social functioning (§ 12.04B2), maintaining concentration, persistence or pace (§ 12.04B3), or repeated episodes of decompensation each of extended duration[9] (§ 12.04B4).

In this case, Plaintiff testified that she performs household tasks, prepares meals, bathes and dresses without assistance, and takes care of her three school-aged children (R. 32), nothing more in the record supports that Plaintiff's affective disorder results in marked difficulties in maintaining concentration, persistence, or pace (§ 12.04B3), and Plaintiff refused treatment after visiting the hospital in June 2009 after a suicide attempt (R. 40), did not seek medical treatment after a second suicide attempt on December 30, 2009, (R. 526), and was not hospitalized after either suicide incident as required under § 12.00C4.  As such, substantial evidence supports the ALJ's determination that Plaintiff's affective disorder does not meet the criteria necessary to

---

[9] The term repeated episodes of decompensation each of extended duration means three episodes of decompensation within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks, and in cases where there are more frequent episodes of shorter duration or less frequent episodes of longer duration, the ALJ must determine if the durational and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C4 ("§ 12.00C4").

establish disability under § 12.04, and Plaintiff is not disabled as a result of Plaintiff's affective disorder.

**Anxiety Disorder**

In this case, the ALJ determined Plaintiff's anxiety disorder was severe, but that Plaintiff was not able to meet the criteria for disability under 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 12.06 ("§ 12.06B").  (R. 16).  As the criteria for disability under § 12.04 and § 12.06 are the same, and substantial evidence supports the ALJ's determination that Plaintiff was not able to meet the criteria for disability required under § 12.04, substantial evidence also supports Plaintiff is not disabled under § 12.06.

**Substance Abuse Addiction**

Although Plaintiff's disability application includes a claim of disability from substance addiction disorder, only scant reference (R. 437) is made to support that Plaintiff was impaired as a result of addiction to illicit substances during the relevant period of disability.  Further, Plaintiff's sole reference to her substance abuse in support of Plaintiff's motion describes Plaintiff as having "substance abuse in remission." Plaintiff's Memorandum at 2 (citing R. 54).  Accordingly, the record is devoid of substantial evidence establishing Plaintiff is disabled as a result of Plaintiff's substance addiction disorder.

**Credibility of Plaintiff's Subjective Complaints**

In the instant case, the ALJ, as required, evaluated Plaintiff's impairment under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, and determined that although the record establishes Plaintiff has the severe impairments of obesity, asthma, bipolar disorder, anxiety, and substance abuse in remission, Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to

the extent inconsistent with Plaintiff's testimony.  (R. 58).  Plaintiff contests the ALJ's

credibility determination, alleging that the ALJ mischaracterized special factors including

Plaintiff's daily activities, and other factors concerning Plaintiff's functional limitations

used to evaluate Plaintiff's credibility.  Plaintiff's Memorandum at 19.  In particular,

Plaintiff contends the ALJ failed to consider Plaintiff's testimony about daily activities

including that Plaintiff's children "help a lot" with chores, that Plaintiff grocery shops only

once each month to avoid having to do so more frequently, and Plaintiff's testimony that

she is unable to maintain adequate personal hygiene.  Plaintiff's Memorandum at 18-19.

Plaintiff further asserts that the ALJ's credibility determination is without substantial

evidence as the ALJ characterized Plaintiff's mental health treatment as "sporadic," and

improperly relied on such determinations in assessing the Plaintiff's residual functional

capacity.  Plaintiff's Memorandum at 19-20.

It is the function of the ALJ, not the court, to assess the credibility of witnesses.

*Tankisi v. Commissioner of Social Security*, 521 Fed. Appx. 29, 35 (2d Cir. 2013).  Pain

or other symptoms may be important factors contributing to a disability claimant's

functional loss and may affect a claimant's ability to perform basic work activities if

relevant medical signs or laboratory findings show the existence of a medically

determinable impairment that could "reasonably" be expected to cause the associated

pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).  "A claimant's testimony is entitled

to considerable weight when it is consistent with and supported by objective medical

evidence demonstrating that the claimant has a medical impairment which one could

reasonably anticipate would produce such symptoms"  *Hall v. Astrue*, 677 F.Supp.2d

617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL

1605414, at *15 (N.D.N.Y. 2009)).  In this case, however, substantial evidence does not

support Plaintiff's subjective complaints of disability resulting from Plaintiff's affective

disorder.  In particular, Plaintiff's GAF scores of 55 on July 2, 2009 (R. 420), 53 on July

8, 2009 (R. 433), and 55 on November 10, 2009 (R. 525), show only moderate

difficulties in Plaintiff's social and occupational functioning abilities, and Dr. Ortega

assessed Plaintiff with improved symptoms on January 6, 2010 (R. 526-27), January

13, 2010 (R. 528), February 18, 2010 (R. 529), June 2, 2010 (R. 532), September 29,

2010 (R. 534), and November 24, 2010 (R. 535).  As such, the ALJ's determination that

Plaintiff's subjective complaints related to Plaintiff's affective disorder are not credible is

supported by substantial evidence, and Plaintiff's motion on this issue should be

DENIED.

## F. Suitable Alternative Employment in the National Economy

Once an ALJ finds a disability claimant does not have a severe medically

determinable physical or mental impairment , 20 C.F.R. § § 404.1520(a)(4)(ii), that

significantly limits the claimant's physical and mental ability to do work activities, *Berry*,

675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to

meet the criteria established for an impairment listed under Appendix 1, the burden

shifts to the Commissioner to show that despite the claimant's severe impairment, the

claimant has the residual functional capacity to perform past work, 20 C.F.R. § §

404.1520(a)(4)(iv), and prove substantial gainful work exists that the claimant is able to

perform in light of the claimant's physical capabilities, age, education, experience, and

training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).  To make such a

determination, the Commissioner must first show that the applicant's impairment or

impairments are such that they nevertheless permit certain basic work activities

essential for other employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d

Cir. 1981).  Specifically, the Commissioner must demonstrate by substantial evidence

the applicant's "residual functional capacity" with regard to the applicant's strength and

"exertional capabilities."  *Id.*  An individual's exertional capability refers to the

performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.[10]

*Decker*, 647 F.2d at 294.  In addition, the Commissioner must establish that the

claimant's skills are transferrable to the new employment, if the claimant was employed

in a "semi-skilled" or "skilled" job.[11]  *Id.* at 294.  This element is particularly important in

determining the second prong of the test, whether suitable employment exists in the

national economy.  *Id.* at 296.  Where applicable, the Medical Vocational Guidelines of

Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the

Secretary's burden of proof concerning the availability of alternative employment and

---

[10] "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools....Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

[11] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.
    "Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).
    "Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

supersede the requirement of vocational expert testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

In this case, the ALJ determined that Plaintiff retained the residual functional capacity to perform a full range of work at all levels with the limitations of avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, performing only simple, routine and repetitive jobs, in a low stress environment, with only occasional decision making, changes in the work center, or direct interaction with the public. (R. 57). Plaintiff contests the ALJ's residual functional capacity assessment of Plaintiff, specifically, that the ALJ's determination to assign little weight to Dr. Ortega's opinion that Plaintiff would be off task more than 20% of a workday (R. 642), violates the treating physician rule. Plaintiff's Memorandum at 17-18.

In this case, however, the ALJ's determination to assign little weight to Dr. Ortega's January 26, 2011 opinion is supported by the record, and, as such, does not violate the treating physician's rule. In particular, Plaintiff testified she is able to care for her three children (R. 32, 33), tends to personal hygiene (R. 32), and attends school functions when she is feeling well. *Id.* Moreover, Dr. Ortega opined at several of Plaintiff's visits that Plaintiff reported feeling pretty good (R. 528), did not show any depression or anxiety (R. 529), had improved (R. 532), was stabilized and was feeling good and in control (R. 534), and showed no psychosis or mania. (R. 535). No other evidence in the record supports Dr. Ortega's opinion that Plaintiff's impairments result in Plaintiff being off task 20 % of each day, which Dr. Ortega qualified by stating he was unable to answer many of the statements presented on the medical source statement

questionnaire because Plaintiff had not held a job in a long time.  (R. 642).  Accordingly,

the ALJ's residual functional capacity assessment of Plaintiff, based on substantial

evidence and consideration of Plaintiff's maximum ability to do sustained work in an

ordinary setting on a regular and continuing basis, does not violate the treating

physician rule.  Plaintiff's motion on this issue should be DENIED.

**Vocational expert testimony**

In this case, Plaintiff contends that the ALJ posed an incomplete hypothetical to

the VE, as such hypothetical failed to include Dr. Ortega's opinion that Plaintiff's mental

impairment would result in Plaintiff's inability to meet competitive work standards.

Plaintiff's Memorandum at 22.  Such contention is contrary to substantial evidence.

As discussed, Discussion, *supra*, at 24, Plaintiff's GAF scores, and Dr. Ortega's

assessments that Plaintiff showed improved symptoms conflict with Dr. Ortega's opinion

on January 11, 2011 (R. 642), that Plaintiff would be off task 20% of each workday.  As

such, the ALJ's hypothetical to the VE, that did not include Dr. Ortega's opinion that

Plaintiff would be off task 20% of each workday, is proper, *Priel v. Astrue*, 453 Fed.

Appx. 84, 87 (2d Cir. 2011) (proper hypotheticals to vocational expert include medical

and non-medical evidence and discount physician opinions that conflict with record

evidence), and Plaintiff's motion on this issue should be DENIED.

Plaintiff's further contention the ALJ failed to make specific findings on the

physical and mental demands of Plaintiff's past relevant work, Plaintiff's Memorandum

at 22, is also without merit.  In this case, the ALJ put forth Plaintiff's past relevant work

to the VE, and the VE testified that Plaintiff's past relevant work included stock clerk

(semi-skilled/heavy), fast food worker (unskilled/light), cleaner (unskilled/light), home

health aide (semi-skilled/medium), production worker (unskilled/medium), cashier (unskilled/light), and caretaker (unskilled/medium).  (R. 43).  The ALJ then posed a hypothetical situation to the VE that included limitations particular to Plaintiff, including avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation, limited to simple, routine, and repetitive tasks, and requiring a low stress job defined as having only occasional decision making and changes in the work setting, and only occasional direct interaction with the public (R. 44), and the VE reviewed Plaintiff's credentials and limitations, and concluded that Plaintiff would be capable of performing Plaintiff's past relevant work as a cleaner.  (R. 44).  The ALJ then altered the hypothetical to include an individual who would be off task more than 30 percent of the workday from concentration issues, requiring more than two unscheduled breaks per day, and absent more than three times a month, which the VE opined would result in no available occupations suitable to Plaintiff's ability to perform work.  (R. 45).  As such, the ALJ properly submitted all of Plaintiff's limitations to the VE, including consideration of Plaintiff's past relevant work, and Plaintiff's motion on this issue should be DENIED.

## CONCLUSION

Based on the foregoing, Defendant's motions should be GRANTED, Plaintiff's motions should be DENIED, and the Clerk of the Court directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      June 17, 2014
                  Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:     June 17, 2014
           Buffalo, New York